Judge Underwood,
delivered the Opinion of the Court.
Judge Nicholas did not sit.
We approve of the principles upon which the lands incontest have been equally divided between the parties litigant. The controversy lias assumed no now aspect, since it was decided hv this Court, which can authorize the assignment of more than h ill the lands to the anpellants. But on thispoint, we regard the opi-dou of this court, heretofoie delivered, as concluding the rights of the parties; and that in remanding the cause it was intended that nothing more should be done than carry into effect. *139 ¿he principles settled as aplicable to their rights. See the case in 5 Lnt. 250, wnore tile points are Sufficiently stated.
Upon the return of the rase the appellants, by a second amendment of tne original hill, offered io bring into partition the settlement of 40*'acres and to submit to a division according to the deci-ion of this court. This fas t constitutes a suffic ient reason for disregarding tiio e assign me .ts of error which impeach (lie decree, because 600 acres of hind were not allotted to the appellants.
Tite circuit court, by gin interlocutory decree, directed an account to be taken of rents and profits and improvements. From the report of the commissioners it appears that the total value of the improvements m ule by the appellants, and those holding under them upon (lie hauls allotted to the defendants, now appellees, which was regarded as safe, not being covered by any interfering adverse claim, amounted to $1,540; and that the rents, for the use of the improvements so made, amounted to $2,450 69 in value: thus shewing an excess of rents of $910 69. 'I he circuit court reduced this balance to $838 67, upon the ground that the commissioners liad allowed rent upon a part of the lands improper^, by computing the rent on some of the improvements, for time running before the appellants had notice of the claim of tne ancestor of the appellees. The circuit court decreed that the appellants should pay the appellees the aforesaid sum of $838 67 on or before a given day in the ensuing term, and upon the payment being made that theappellees should convey the lands allotted to the appellants.
The appellants did not pay the moneyas required by the decree of the court. Thereupon the court dissolved the injunction and gave the heirs of Clay the benefit of the judgment in ejectment obtained against the appellants, and dismissed their bill without prejudice, decreeing costs against them. To reverse this decree the appellants prosecute an appeal.
We think that the chancellor should have regard 'eel the appellants and appellees as tenants in common *140 It is true that the appellants had not the legal title, jJ(1j t(.ien their right to it was established; and equiLy upon the establishment of a right, will regard tiie consequences resulting from it, and dispose of incide,Ual ^natters, in the same maimer as though the right to it was purely legal from the beginning. According to the doctrines of the common law, one tenant in common was not liable to his companion *°r waste or Cie profits of the estate; although he may have embezzled the profits or appropiiated to himself the whole. The injustice of this docfUne was obviated in England by the statutes of Westminster, 2, 6, 22, and IV. Ann. c. 16; the first giving an action for waste, and the second an account for the profits. II. Com. 194. Baneon’s Abr. title joint tenants and tenants in common letter, L. The provisions of the statutes of Ana were in substance adopted by an act of the colonial legislature of 1748. bee note 19, Tucker’s Blackstone 194. 1 his court, in the case of Coleman vs. Hutchinson, III. Bibb, 211, refer to an act of our parent state, passed in 1784, which authorizes “actions of account in favor of one joint tenant, or tenant in common against another, as his bailiff, for receiving, more than his just share.” It may, therefore, be safely laid down as the law, that a joint tenant or tenant in common, who commits waste, or who receives more of the rents and profits than comes to his share, (to be apportioned according to Ins interest in the estate,) is liable to his co-tenant for the waste or for the excess of rents and profits above his share, under thestatutary provisions aforesaid,
te jmt" o6"" a^t'^c 'in-mo'i. is respon-ibletn his waste Vi^for^ reonivin? more than his the' rmit» a °d profits of the «state so hold,
ff one tenant or joint tenant enter up-•^no^rent''" ami improve the same, by hi» money or tenantes-00" pending neithermmey he^s e'-titied to the exclusiyo benefit of tho ri-nts or profits thus produced.
*140 But w|ieil the estate, at the commencement of the joint tenancy or tenancy m common, yields no rent or profit, and one of the tenants enters, and by imProvlng the estate renders it productive, can the co-tenant, who expends neither money nor labour, come in and claim a share of the profits? This Seems to be the question in the present case. The record does not shew that tiie appellees, or their ancestor, made any improvements upon the laud: on the contrary, all the improvements appear to have been made by the appellants and those holding under them, or by persons who were not tenants, and vyho paid no rents to the appellants. Under these *141 circumstances, we do not perceive the principle upon which the appellees, or their ancestor, as a co-tenant in coiniuou, can ciaba rents. It is clear .that it could not be done at common law: nor. is their any' thing- in the statute of IV. Ann.sc. 16, or the arts of Virginia, which can sanction the' clairti to rems by the appellees or their ancestor.
The sta'utes cl Ann and of Virginia give •n remedy for the recovery nf profits grown gout of an estate from its condition when acqu'red, or produced by the joint labor or expenditure of ’ho co-tenants.
In partition between joint tenants, or tenants m having entered upon the Ian(l an;l im~ hc°will be protected' by the c. urt, ^Veme'nts assigned to him if pmcíowariceín"" division for the enhanced }^¡° of tl>0
These statutes were not designed to create a right in favour of a co-tenant who expended nothing, to share the promts resulting from the money or labour expended by his companion; hut they were intended to a¡ve a remedy, by which the profits of the estate, g-owing out of its condition when acquired, or v Inch the estate yielded, or would yield, independent of any extraordinary expenditure by the party receiving the profits, might bo apportioned accordin'' to the interests of the co-tenants, and the receiver compelled to account to his co-tenant for his share. rims the statutes enforced no more than was required by the principles of morality.
If A. and B are tenants in common of an proved large tract of land, A has an unquestionable right to enter upon and improve it, by making a farm thereon. If he leaves a full portion of its val-tie, m its unimproved state, to satisfy the interest oi B. on partition, it would be unjust to permit B. to claim the part improved by A. or to insist that the enhanced value of the land, owing to the improve-meats made by A. should he taken into consideration in making the partition. If, lor instance, the tract contained 1,000 acres, worth, in its unimproved state, $10 per acre, and was susceptible of an equal division in value, by laying it off in two lots of 500 acres each, then complete justice would he effected in the partition, (the tenants in common holding equal interests,) by assigning to B 500 acres of land in its unimproved slate. If the improvements made by A. were worth $5,000, the whole tract as improved would then be worth $15,000 By giving toB. jn tiic partition, half the value of the whole tract as improved, and making up his share in unimproved land at $10 per acre, he would get 750 acres, leaving 350 only for A. including his improvements. Thus A. in consequence of his labour and money expended in improvements, would lose *142 250 acres of land, worth 10 per acre, whit It he would have obtained had lie acted like B and m ule no improveuie.it upon the estate held in com-non. Sueif a ease need o ily he stated to present lite glaring injustice gf a partition upon such principles, la practice o tr courts have uniformly protected the improvements, made by joint tenants or tenants in common, by ran unir them to be assigned in the partition to the tenant making ¡hum, without giving the other tenant any advantage in the division in consequence of the enhanced value of the laud resulting fuom them. The propriety of this rule is recognized in the decree, for it directs that lite rule shall be observed if pra< ficable. But it was found, that a just portion of the Imds could not be allotted to t’ne appelle;>s, without including improvements made by the appellants, or those holding under them.
If in partitioning land il cuino bo so ilivi led a.? to allot iniimp-o-.od land to s i oh jo nt' tenant, or tenant in commo i. as may no. have «distributed to the impr.iv''fnfint, etili ho »vill n't !k> rnrith’.l to .'ll ir.;e his c-'-um ml l*--iil for (ho pori ’n of impro-P'l 1 aid ivhioh ho may obtain, nor ha? i.ho improver a rich t to ohare;<' fur tilo improvuhnsntls.
We perceive no reason for allowing the appellees rents, merely-because, they happened to get a portion of the improvements in the division, if, hy the improve,needs, the land was made more valuable, 'then hy getting improved land, the appellees have been benefit tod by the labor of others, without ¡laying an equivalent. How they should he entitled to demand rent, upon any principie of morality or law, when they were not entitled to any improvements, if it had been possible to make an equal partition of the land, regarding it in its unimproved state, we cannot perceive, if one joint tenant, or tenant in common, covers the whole of the estate with valuable improvements, so that it is impossible for his co-tenant to obtain his share of the estate without including a part of the improvements so made, the tenant making the imrovements would not be entitled to compensation therefor, notwithstanding they may have added greatly to the value of the land; because it would he the improvers own folly to extend his improvements over the whole estate, and, he< tuu-e it would he unjust to permit a co-tenant, at hh pleasure, to charge another co-tenant with improvements, which the individual charged may not have desired. In such a case the improver stands asa mere volunteer, and cannot, without the consent of his co tenant, lay the foundation for charging him for improvements, if compensa *143 tion for improvements, Unis made, cannot lie recov .i . , . i ered, we. do not see now tne maker o< tnem can l>e required to ¡>ay rent, ortho profits arising from his labor and money, vohinuiidy expended for the advantage of another. Me think he lias lost enough by tne folly of making valuable improvements lor which he cannot obtain < ompcnsation. The doctrines growing out oi our occupant laws do not apply to this case.
When part of appellants compromise pending an appeal and pray a cii^ini?sal the court willo-ily give cos:s upon reversal to such, as pursue -he appeal, not* withstanding the reversal be as t® all.
• The only plau -ihle ground upon which we would place a claim for íents on the part of the appellees is, that the appellants had irregularly resisted a partition, and had nc.uully disseized the appellee „ or their ancestor. Upon scrutinizing the fa< ts, we cannot place the claim for rents upon anv such foundation. On the contrary, it seems to us that the appellants have been anxiom-Jy endeavoring for years to effect a partition of the land, and that the ancestor of the appellees has been resisting their efforts and denying their right to partition.
So much of the decree, therefore, as directed the payment of $838 67 by the appellants to the . ppellees for rents is erroneous. Even if it had been proper to allow rents, we cannot perceive how the failuie to pay the amount decreed for rents justifies the dismissal of the hill, and the refusal of the court to carry the partition made into full effect, by reqi'iiring tiie appellees to convey the title to the appellants for their part of the land.
The decree is, therefore, reversed, and the case remanded with directions to enter a deciee in conformity to this opinion.
it seems that since the appeal was made, a part of the appellants have compromised with Clay’s heirs, anil a dismissal of the appeal was the consequence. The order of dismissal on the application of part of the appellants upon affidavits filed was set aside, and this'bas produced spine difficulty in giving a proper disposition of the cause, as only part of the appellants persevere in prosecuting tiie appeal. When we consider thdt the dismissal oT the lull in the circuit court was without prejudice, and that all parties, if that dismitssal remains unreversed, would stand upon their original equity, and would not be *144 concluded bv the decree, we have thought it best to reverse the decree of the circuit court, in respect to all the parties, and remand the cause. When tiie case returns Clay’s heirs may then have an opportunity of showing that they have purchased in the shares, or compromised with a part of Nelson’s heirs, in which event the circuit court will decree in favor of those only who have retained their interest.
Brown and Bledsoe, for appellants; Crittenden, for appellee.
The parties who, as appellants, prosecuted the appeal, and who are mentioned in the affidavits, and those alone, may have a judgment for their costs in this court.